IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHERINE GODFREY, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 12 C 08601 |
| v. | ) |
| | ) Judge John J. Tharp, Jr. |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In this putative class action, the plaintiffs allege that, after successfully suing the City of Chicago as part of a class of African-American applicants for positions as Chicago firefighters who were discriminated against with respect to the required written examination, they then suffered discrimination anew, based on their gender, when they went through the remedial hiring process and failed the department's physical abilities test. The City moves for summary judgment, primarily arguing that the plaintiffs' suit is barred by the remedial injunction in the prior race discrimination case. The Court disagrees; for the reasons that follow, summary judgment is denied except—as explained in Part IV of this opinion—as to two plaintiffs who were not hired because of a non-discriminatory reason.

## BACKGROUND

In *Lewis v. City of Chicago*, No. 98 C 5596, after many years of litigation— including a trip to the Supreme Court of the United States, *see* 560 U.S. 205 (2010)—the City was found liable for race discrimination in hiring firefighters. The plaintiffs were African-American applicants for firefighter positions whose scores on the 1995 written examination resulted in their being designated as "qualified" but not "well qualified" on the 1996 Eligibility List, used for

1

hiring for the next decade. *Lewis* culminated in a remedial order (the "injunction"). It required the employment of 111 class members as firefighter candidates (who would still have to graduate from the academy and meet all other hiring criteria), and for the rest of the class members, it provided damages characterized by the City as "backpay" awards, paid from a common fund. The process by which the 111 firefighter candidates were to be selected is set forth in the injunction. In summary, class members were given the opportunity to state their interest in pursuing one of the remedial hiring positions; 1,658 class members did so. A computerized lottery system randomly sorted these applicants by number, and the first 975 were invited to proceed in the hiring process, the next step of which was the physical abilities test ("PAT"). The plaintiffs in this case were among that group of 975; each of them took the PAT in November 2011, and each was informed in a letter dated December 1 that she had failed. Thereafter, each plaintiff was entitled to, and did, collect the backpay award. There was no release of claims in consideration for that court-ordered relief.

In the meantime, other aspiring firefighters were taking the PAT in the ordinary course of hiring. And on July 19, 2011, a class of women who took the test from September 2007 on, and failed, brought a putative class action against the City, alleging both intentional discrimination and disparate impact claims under Title VII based on the requirements of the PAT. *See Vasich v. City of Chicago*, 11 C 4843. This Court narrowed the prospective class but otherwise denied the City's motions aimed at winnowing down the claims, and ultimately the case settled (subject to final approval).[1] *Vasich* was filed on July 19, 2011, before the final injunction was entered in

---

[1] For that reason, the Court denies the motion to consolidate *Godfrey* with *Vasich* (Dkt. # 36) as moot.

*Lewis* on August 17, 2011, but no one informed the *Lewis* court of the allegations of gender discrimination with respect to the PAT.[2]

*Godfrey* was filed on October 12, 2012, within 90 days of the plaintiffs' receipt of their right-to-sue notices from the EEOC. The first administrative charges had been filed as early as December 5, 2011, within days of the applicants learning that they had failed the PAT. The plaintiffs immediately sought to have *Godfrey* transferred to this Court, where *Vasich* was pending (and not yet settled), while the City immediately moved to have *Godfrey* transferred to Judge Gottschall, who presided over *Lewis*. Judge Gottschall rejected the City's arguments that the case was related to *Lewis* such that it qualified for reassignment. She also declined the City's invitation to dismiss *Godfrey* outright, as a form of "enforcing" the *Lewis* injunction, instead instructing the City to make its argument within the confines of the *Godfrey* litigation. This Court granted the parties' agreed motion to reassign *Godfrey* to this Court as related to *Vasich*. Thereafter, the City moved for summary judgment, based primarily on its contentions that the relief sought by the *Godfrey* plaintiffs violates the *Lewis* injunction in letter and spirit.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Hall v. City of Chicago*, 713 F.3d 325, 330 (7th Cir. 2013). The parties' submissions reveal some disputes of fact, but none that the Court deems material to the legal arguments that the City raises in its motion.[3] The

---

[2] The *Vasich* plaintiffs, who are on the City's 2006 Eligibility List, took a version of the PAT revised in 2007. The *Lewis* class members, who were on the 1996 list, took the pre-2007 version of the PAT, although they did not actually take it until November 2011.

[3] For this reason the Court does not find it necessary to address the City's argument that portions of the plaintiffs' Local Rule 56.1 submissions are not based upon admissible evidence. And it

3

main question is whether the *Lewis* injunction forecloses any further relief for the *Godfrey* plaintiffs; the City advances several arguments, but they all ultimately concern to the scope of the *Lewis* case and what the injunction means. The City's other arguments—for example, that the Godfrey complaint violates Rule 23(b)(2) and is barred by laches—likewise raise legal issues as to which the Court gleans no *material* factual disputes.

## I.  The Effect of the *Lewis* Injunction on the *Godfrey* Claims

The thrust of the City's argument is that because the *Godfrey* plaintiffs took the PAT in 2011 only by virtue of being part of the *Lewis* class, any relief associated with the remedial rehiring process has to come from the *Lewis* injunction or not at all. The City further argues that because the *Lewis* injunction, in its view, affirmatively bars further relief for anyone on the 1996 eligibility list beyond what has been provided already, the plaintiffs' claims are foreclosed.

### A.  Language of the Injunction

The City first argues that the *Lewis* injunction "precludes any further hiring from or other relief based on the now retired 1996 eligibility list." The City cites a provision of the injunction that states: "The 1996 Eligibility list will be used solely for the purpose of the screening and processing of class members in order to hire the shortfall of the 111 class members as firefighters, and other than hiring of class members pursuant to this Order, there shall be no further hiring from the 1996 Eligibility List." Inj. ¶ A6, Dkt # 27-1 at 4. According to the City, because the remedial hiring process has been completed, the 1996 list is extinguished for all purposes, which means that the *Godfrey* plaintiffs, who did not receive any of the 111 academy

---

avoids entirely the non-issue of whose attorney should have known what, when, with respect to potential gender-based claims targeting the PAT.

spots, have no further avenue into the department apart from those available to the general public.

The obvious concern that both the plaintiffs and the *Lewis* court have identified with the City's interpretation of the injunction is that, under that view, even if the *Godfrey* plaintiffs did not receive any of the 111 spots because the PAT is discriminatory against women, they have no way to obtain relief under Title VII. The City brought this argument to the *Lewis* court in its motion to "enforce" the injunction by dismissing the *Godfrey* claims. Judge Gottschall declined to rule on the motion because *Godfrey* was not before her. However, her opinion denying the City's motion to reassign *Godfrey* to her as related to *Lewis* sheds some light on her view of the scope of *Lewis* and the remedial injunction. She wrote, "the question of whether the physical abilities test given to women members of the *Lewis* class . . . had an illegal disparate impact on women" was a "separate, highly complex issue that was never considered or decided in *Lewis*." *Lewis* Mem. Op., No. 98 C 5596, Dkt. # 637 at 2. She went on to say that the issues are "totally different." *Id.* And she labeled as "fanciful" the City's concerns that allowing *Godfrey* to proceed would subject the City to double liability, explaining: "Nothing in the *Lewis* injunction was intended to insulate the City from what is alleged to have been an independent Title VII violation."

The City now asks this Court to interpret the *Lewis* injunction differently than did the *Lewis* court itself. It is true that Judge Gottschall's opinion in the context of the reassignment motion is not binding, particularly where she took care to leave any issues about the viability of the *Godfrey* claims to this Court. But upon reviewing the injunction, the Court agrees that it has no effect on the sex discrimination claims brought by the *Godfrey* plaintiffs.

The injunction's language about the 1996 eligibility list does not foreclose the claims of the *Godfrey* plaintiffs.[4] The injunction makes clear that the 1996 list is to be used for "the screening and processing of [*Lewis*] class members in order to hire the shortfall of the 111 class members as firefighters." It was indeed used for that purpose, but the process is alleged to have been tainted by gender discrimination. The injunction does not account for this occurrence in any way. It ordered the hiring of 111 members of the *Lewis* class to remedy racial discrimination in connection with hiring based on written test scores. Any remedy entered in the *Godfrey* case will arise from a finding of discrimination based on an entirely different test and will in no way violate the injunction entered in *Lewis*; the injunction does not purport to say that no member of the *Lewis* class could assert any other discrimination claim in connection with the hiring process. The statement that there shall be "no further hiring" from the 1996 list presupposes, understandably, that the "screening and processing" of applicants would be fair and non-discriminatory. If it was not, the injunction does not insulate the new discrimination from Title VII. In essence, the *Lewis* remedial hiring is not complete—and the 1996 list is not "retired," in

---

[4] This is true despite the *Lewis* court's statement on October 10, in the context of granting the City's motion to enforce the injunction as to a union member not in the *Lewis* class who nevertheless sought hiring along with the class members, that "the only appropriate use of the 1996 eligibility list is to identify the 111 people on that list who are going to get jobs pursuant to the resolution of this case." *See* City Local Rule 56.1 Exhibit K, Dkt. # 27-2 at 2. Judge Gottschall understandably did not qualify her statement to anticipate the possible further use of the list in a separate discrimination case that was not before her. But that is not license to read her statement, and the injunction itself, to bar any future use of the list even in the context discrimination that occurred within the remedial hiring process—an explicitly appropriate use of 1996 eligibility list. The 2006 list has indeed superseded the 1996 list *except as to the remedial hiring of <u>Lewis</u> class members*. The steps ordered by the *Lewis* injunction, including filling the 111 spots, have been completed. If there is to be relief for discrimination that occurred within that process, it will not be governed by the *Lewis* injunction but by whatever remedy is fashioned in *Godfrey*, if the City is found liable. And that relief would inure to the plaintiffs not because they are on the 1996 list, but because they were not given a fair opportunity to compete for the *Lewis* positions.

the City's jargon—until the *Lewis* class members have the opportunity to participate in a fair process or to be compensated for the lack of one. Otherwise, there would be no remedy for new discrimination during the remedial hiring process, and as the *Lewis* court stated, "[n]othing in the *Lewis* injunction"—including ¶ A6—"was intended to insulate the City from what is alleged to have been an independent Title VII violation."

The City makes a wholly inapt comparison of the *Godfrey* plaintiffs to a male paramedic on the 1996 eligibility list who filed a union grievance based upon his exclusion from the fire academy class of *Lewis* plaintiffs, arguing that although he was not a *Lewis* class member, he was on the same 1996 hiring list and deserved consideration as a "crossover" hire (a kind of internal promotion for paramedics in the department). As to that grievant, Anthony Toman, Judge Gottschall ruled that he was not entitled to a spot in the 2012 academy class because the 1996 list was not to be used except to complete hiring for *Lewis* class members. The City states that the *Godfrey* plaintiffs, like Toman, are seeking additional remedies based on their positions on the 1996 list. But the comparison fails; the *Godfrey* plaintiffs are *Lewis* class members to whom the injunction clearly afforded eligibility for remedial hiring. Moreover, the City is completely ignoring the separate, intervening injury allegedly suffered by the *Godfrey* plaintiffs. They are seeking to remedy a distinct injury: sex discrimination caused by the PAT. They are not seeking further remedies for the racial discrimination that they, and all members of the *Lewis* class, suffered.

  **B.**  **"Collateral Attack"**

The City further argues that the Godfrey case is an "impermissible collateral attack" on the judgment in *Lewis*. It states: "[T]he only reason [plaintiffs] were offered an opportunity to take the PAT in 2011 was because they are *Lewis* Class members. The inevitable conclusion is

7

that the Plaintiffs are looking for a second bite at the apple by leveraging their *Lewis* Class status into an additional collateral claim they would not have had, but for being members of the *Lewis* Class." Mem., Dkt # 26 at 6.

This argument is somewhat obtuse. It is true enough that the *Godfrey* plaintiffs would not have taken the PAT in 2011 if they were not *Lewis* class members. But that is because they faced a racially discriminatory hiring process when they first applied in 1995 and did not even take the PAT. The fact that a separate instance of discrimination occurred within the *Lewis* remedial process, as alleged, does not mean the plaintiffs are seeking a "second bite at the apple." They are still trying to get their *first* bite: a non-discriminatory hiring process. The City's perverse logic would transform the *Lewis* injunction from a remedy for past discrimination into a license for further discrimination by barring objections based on new instances of discrimination (even further discrimination based on race, not just gender) during the hiring process.

What the City is effectively saying when it argues that the Court must grant it summary judgment based upon the *Lewis* injunction is that *Lewis* collaterally estops the plaintiff's claims—in other words, it is a *res judicata* argument: the *Godfrey* plaintiffs, their theory goes, could have raised their challenge to the PAT in the *Lewis* case and, having failed to do so, they are barred from asserting that challenge in another suit. Perhaps the reason the City carefully eschews the appropriate terminology for this argument, however, is that the relevant test clearly shows that the *Lewis* case has no preclusive effect here. "Claim preclusion under federal law has three ingredients: a final decision in the first suit; a dispute arising from the same transaction (identified by its 'operative facts'); and the same litigants (directly or through privity of interest)." *Czarniecki v. City of Chicago*, 633 F.3d 545, 548 (quoting *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 851 (7th Cir. 2009)). Irrespective of any different legal

8

theories invoked, and whether the claims were actually brought in the first suit, "[t]wo claims are one for the purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations" *Id*. at 550 (citations omitted).

The claims asserted in *Lewis* and those pressed in *Godfrey* clearly fail the "same transaction" test. *Lewis* was premised on the racially discriminatory effect of the written examination administered to firefighter applicants in 1995 for purposes of creating the 1996 eligibility list. In *Godfrey*, the plaintiffs allege that the PAT they took—for the first time—in 2011 discriminated against female applicants. The 1995 written exam and the physical exam taken in 2011 are not the same "transaction" for purposes of claim preclusion. The temporal gap is obvious, and the claims address different stages of the hiring process that test entirely different skills. And the *Lewis* remedial hiring cannot be viewed as simply a continuation of the same hiring process that began in 1995 with the written examination.

The City suggests that there was an opportunity to bring up gender discrimination during the remedial phase of *Lewis*, because counsel for the *Lewis* plaintiffs sought to modify the PAT standards to account for any disadvantage flowing from the fact that class members would be taking the test when they were older. And there had been at least some discussion of women's relative disadvantage on the PAT during the deposition of the test's developers. The City apparently believes that these facts show that the *Godfrey* plaintiffs had the opportunity to explore the gender bias in the PAT within the confines of *Lewis* and failed to do so. But the City ignores the fact that the plaintiffs did not obtain any accommodation for age, and, moreover, there was no allegation that the PAT is used to screen out older applicants or that it has a disparate impact on them as a protected class. Furthermore, in defending its own failure to apprise the *Lewis* court of potential problems with the remedial hiring scheme, the City insists

9

that it did not have proper notice of the gender discrimination issues because *Vasich* made only "a conclusory allegation of adverse impact based upon a different physical abilities test." The City cannot defend its silence on the ground that problems with the PAT were unknowable (to it) or unsubstantiated while also claiming that the plaintiffs had a full opportunity to raise and vet the issues with the *Lewis* Court.

Because the race and sex discrimination claims arise from completely different facts, and there was no meaningful way to address sex discrimination within the remedial phase of *Lewis*, the *Godfrey* plaintiffs are not "bound by the remedy of the Injunctive Order provided to all non-hired Lewis class members as a result of their not being hired from the 1996 eligibility list." The *Lewis* injunction is binding with respect to racial discrimination that occurred in the scoring of the 1995 written examination—the only claim that *Lewis* addressed and the injunction remedies. It does not bind the *Lewis* class members with respect to independent claims of discrimination that could not have been brought along with the *Lewis* claims because they did not even occur until after the City had already been adjudged liable for racial discrimination. Whether the plaintiffs finally reached the PAT stage of the hiring process as a result of their membership in the *Lewis* class or not (as with the *Vasich* plaintiffs), the *Lewis* judgment does not bar them for asserting claims for relief based on entirely new episodes of discrimination.

### C. Class-wide Remedy

Next, the City argues that under Federal Rule 23(b)(2), only class-wide relief is available to *Lewis* class members, precluding the *Godfrey* plaintiffs from receiving any relief that does not inure to the entire *Lewis* class. Again, the City's argument borders on the nonsensical. Class-wide relief alone is available to the *Lewis* class *for the claims alleged in <u>Lewis</u>*. If certain class members suffered an independent act of discrimination after the events giving rise to *Lewis*, the

fact that all of the class members were not affected is irrelevant to their ability to pursue relief. And if they separately demonstrate entitlement to relief, then nothing about the *Lewis* injunction will have been "subverted," as the City insists. The City is simply wrong in characterizing the *Godfrey* lawsuit as an attempt to receive "supplemental, individualized relief" for the same discrimination that is remedied by the *Lewis* injunction. Dkt. # 26 at 8.

Rule 23(b)(2) indeed requires injunctive relief to inure to all class members—in the same case. The *Lewis* injunction continues to meet that requirement as to the *Lewis* class members. Notwithstanding that they are also members of the *Lewis* class, the *Godfrey* plaintiffs constitute their own, separate putative class. They have not yet been certified as a class, but if that were to occur, then they too would be subject to Rule 23(b)(2) to the extent they want injunctive relief. The City does not cite any authority for their argument that Rule 23(b)(2) precludes class-wide relief for a group of plaintiffs who were part of a *different class* in an earlier lawsuit.

### D. Double Recovery

Finally, the City argues that the *Godfrey* claims are barred because a plaintiff "may receive only one compensation for his or her injuries, and a double recovery for the same injury is not allowed." Dkt # 26 at 8. As the plaintiffs point out, the City's premise is faulty: the *Godfrey* plaintiffs are not seeking to redress "the same injury" that *Lewis* remedies: racial discrimination in the 1995 written examination. They are seeking to redress the use of a physical abilities test in 2011 that, they allege, discriminated against them as women applicants. The ultimate effect of the two injuries might be the same—not being employed by the fire department—but that does not make the injuries less distinct.

The city sidesteps the independent act of discrimination alleged by the *Godfrey* plaintiffs by arguing that because they took the PAT in 2011 only by virtue of their membership in the

11

*Lewis* class, "their injury was proximately caused by the cutoff score used in connection with the 1995 written exam, not by the 2011 PAT." Dkt. # 26 at 8. Not so. Not being hired off of the 1996 eligibility list was proximately caused by the cutoff score. Not being hired among the 111 remedial hires for Lewis had nothing to do with their 1995 cutoff score; according to the complaint, it was the discriminatory impact of the PAT that unfairly kept women from obtaining whatever number of spots they would have earned had the PAT been gender-neutral.

At best, the City's concerns about double recovery are potentially relevant to the appropriate damages for the *Godfrey* plaintiffs. They have already been compensated for their non-employment from 1995 to the time of the 2011 remedial hiring. But if the plaintiffs were denied the chance to be among the 111 *Lewis* hires by gender discrimination, then they will have shown injury that entitles them to some kind of relief from the time of that separate injury. Or, they might be entitled some of the injunctive relief they are claiming, such as another round of remedial hiring. But it is too soon, before a class has been certified, and before the complaint has been answered (this motion was the City's response to the complaint) to circumscribe the relief available to the plaintiffs.

## II. Title VII Arguments

The City next argues that the plaintiffs' claims are barred by the provision of Title VII that precludes a challenge to "an employment practice that implements and is within the scope of a litigated or consent judgment" in an employment discrimination case by a person who had "actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect" her interests and rights, and who had "a reasonable opportunity to present objections to such judgment or order." *See* 42 U.S.C. §2000e-2(n)(A)(i).

The City skips over the threshold question whether the PAT is an "employment practice that implements and is within the scope of" the *Lewis* injunction. The PAT does not "implement" the *Lewis* injunction. It is a required element of the City's hiring process for firefighters that exists independent of the remedial plan created by the injunction. The only mention of the PAT in the injunction is by way of an example: in paragraph A3, the City is given 70 days in which to extend offers to the interested candidates "to advance to the remaining steps of the entry-level firefighter hiring process (consisting of the physical abilities test, background investigation, drug screen, and medical examination)." Inj., Dkt. # 27-1, at ¶ A3. The "remaining steps" are the general requirements for all applicants; neither the PAT nor the drug screenings "implement" the injunction. The City, not the injunction, defines the hiring process.

Moreover, the City faults the *Godfrey* plaintiffs because they did not "present objections" to the *Lewis* injunction as required by § 2000e-2(n)(A). But they did not have any "objections" to present, especially in August 2011, months before they took and then learned they failed the PAT.[5] The plaintiffs did not object to taking the PAT; that does not mean they assented to the discrimination that they say ensued. They are suing because they believe they failed the test as a result of gender discrimination; they are not challenging the *Lewis* injunction's process of requiring the 111 remedial hires to complete all stages of the City's normal hiring process.

Finally, the City is off base in arguing that the plaintiffs "failed to assert their rights before the City hired the 111 [*Lewis*] class members," and therefore Title VII bars them from

---

[5] The pendency of *Vasich* for three weeks before the injunction was entered does not change this fact. The allegations of sex discrimination in *Vasich* would not have entitled the *Godfrey* plaintiffs—who had not yet taken or failed the PAT—to relief in the context of the *Lewis* litigation. In any case, the City was in an equal, if not superior, position to object to the *Lewis* injunction if it believed that the failure to account for alleged sex discrimination in the PAT could leave it vulnerable to duplicative claims.

doing so now. The argument suggests that *Godfrey* plaintiffs should have sought modification of the final *Lewis* injunction after they learned on December 1, 2011, that they failed the PAT, and before the completion of the *Lewis* remedial hiring in April 2012. But the City fails to identify any grounds on which such a challenge could have been lodged. Surely the City is not suggesting that the plaintiffs' untested allegations of gender discrimination would have entitled them to relief in the *Lewis* remedial hiring process. This goes against the City's strident assertion that only class-wide relief is available to members of the Rule 23(b)(2) class. And it would completely circumvent Title VII's process for asserting a claim of discrimination, which begins with the filing of an administrative charge, an action that the *Godfrey* plaintiffs took swiftly.

### III. Equitable Concerns

Finally, the City appeals to equitable principles to quash the *Godfrey* claims. It argues that the doctrine of laches should be applied to prevent the plaintiffs from moving ahead with these "collateral proceedings." In Title VII cases, an employer may raise a laches defense, "which bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant"; the defense "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Pruitt v. Chicago*, 472 F.3d 925, 928 (7th Cir. 2006) (quoting *Nat'l R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–15 (2002)).

The City asserts, once again, that the plaintiffs inexcusably delayed bringing their claims, to the prejudice of the City. As should be obvious by now, the Court disagrees with the premise that there was unjust delay in bringing this case. The plaintiffs' claims did not become ripe until they learned on December 1, 2011, that they had failed the PAT. They filed their EEOC charges shortly thereafter, and filed this suit within 90 days of receiving their right-to-sue notices,

14

thereby complying with the statute of limitations set by statute. The City's real argument it is not that the plaintiffs unreasonably delayed *filing suit*—which is what a true laches defense would assert—but that they failed to inform the *Lewis* court before the remedial hiring was complete that they believed the PAT discriminated against female applicants.[6] The City says that the plaintiffs were obligated to take their suspicions immediately to the *Lewis* court, the "proper forum." But laches is about timing, not about "forum." And the doctrine requires the timely filing of a claim, not some generalized assertion of rights. In any case, apprising the *Lewis* court of suspected gender discrimination with respect to the PAT would have been a non-sequitur in the remedial phase of case that pertained to race discrimination in the written examination. This is true despite the Lewis plaintiffs' attempt to build an accommodation for age into the PAT; the age disadvantage, unlike gender bias, is an infirmity that arose directly from the long-delayed administration of the test resulting from the initial race discrimination. An accommodation for age was therefore a natural and relevant remedy to seek, albeit unsuccessfully, in the context of the *Lewis* remedy. The same cannot be said for gender bias, which is allegedly inherent in the PAT itself and unrelated to the events on which *Lewis* was based. In short, the plaintiffs did not sleep on their rights with respect to bringing their claims.

The City's prejudice argument is also dubious. It argues that it would be prejudiced if the *Godfrey* plaintiffs "are allowed to seek an additional remedy, because it could be forced to select more *Lewis* class members for Fire Academy training than the 111 *Lewis* Class members

---

[6] "To what end?" is the question that springs to the Court's mind. How the *Lewis* court possibly could have handled new, unproven claims of gender discrimination in the context of the already complicated and *final* remedial hiring plan imposed for the City's racial discrimination is a mystery that the City has not attempted to answer, despite its fervency in arguing that that was the only proper step for the plaintiffs to have taken.

previously ordered . . . or pay more back pay . . ., even though Plaintiffs' allegedly injury in this cases is the result of the same conduct that led to the *Lewis* Injunctive Order." Mem., Dkt # 26 at 14. As the Court has explained already, these plaintiffs are not seeking an "additional remedy" for the "same conduct." They are seeking an original remedy for new discrimination. If the City ultimately owes any *Godfrey* plaintiff relief, it will be based upon liability for different conduct altogether, and therefore, there would be no unfair prejudice to the City.

IV.     **Lowest-Ranked Plaintiffs**

Finally, the City argues that, no matter what the fate of its other legal arguments, the Court must grant judgment in its favor against Plaintiffs Smith and Garner, who were ranked numbers 469 and 496,[7] respectively, in the Lewis remedial hiring lottery. The City contends that, because the 111 remedial positions were filled from among candidates ranked 1 to 455 in the randomized lottery—a fact the plaintiffs admit— Smith and Garner would not have been hired even if they had not failed the PAT, or had not been required to take it at all. The Plaintiffs do not respond to the argument.

In this limited regard, the City's reasoning is sound. "To have standing to bring a disparate impact claim, a plaintiff must show that she was personally injured by the defendant's alleged discriminatory practice." *Farrell v. Butler Univ.*, 421 F.3d 609, 617 (7th Cir. 2005). In this case, the only unhired applicants who were personally injured by the allegedly discriminatory physical test were those who could have been hired but for the test. Smith and Garner are not among those applicants because their rank order would have prevented their

---

[7] These are the ranks given in the City's brief. However, the chart included in their Local Rule 56.1 statement, which the plaintiffs agreed was accurate, lists the ranks as 468 and 495, respectively. *See* Pl. L.R. 56.1 Response, Dkt. # 44 at 6. The discrepancy does not matter for present purposes.

hiring in any event. The standing requirement is no less onerous for a disparate treatment (a.k.a. intentional discrimination) claim, and furthermore, a crucial element of such a claim is that the plaintiff suffered an adverse employment action "because of" her gender. *See Anderson v. Cornejo*, 355 F.3d 1021, 1024 (7th Cir. 2004) (explaining that "'intent' (and thus disparate treatment) in constitutional law means doing something because of, rather than in spite of (or with indifference to), the prohibited characteristic"); *Bragg v. Navistar Intern. Transp. Corp.*, 164 F.3d 373, 376 (7th Cir. 1998) (("Disparate treatment occurs when a plaintiff is intentionally treated less favorably than others simply because of his race, color, religion, sex or national origin") (quotation marks omitted)). There are no allegations that the numerical rankings of the first 975 candidates invited to move on the hiring process were assigned in anything but a random and non-discriminatory way; therefore, anyone ranked lower than 455 has only the luck of the draw, not discrimination, to blame for not advancing in the remedial hiring process. The City is therefore correct that judgment should be entered against Plaintiffs Smith and Garner.

\* \* \*

For the reasons explained above, the Court denies the City's motion for summary judgment, except insofar as it pertains to plaintiffs Garner and Smith, as to whom judgment is entered in favor of the City. The plaintiffs' motion to consolidate this case with *Vasich* is denied as moot in light of the pending settlement of that case.

Date: September 25, 2013

John J. Tharp, Jr.
United States District Judge